IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

CATHERINE G. HODGES,

    Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

    Defendant.

No. C14-2001

RULING ON JUDICIAL REVIEW

TABLE OF CONTENTS

*I.*    *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II.*   *PRINCIPLES OF REVIEW* . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*III.*  *FACTS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    *A.*   *Hodges' Education and Employment Background* . . . . . . . . . . . 4
    *B.*   *Administrative Hearing Testimony* . . . . . . . . . . . . . . . . . . . . 4
        *1.*   *Hodges' Testimony* . . . . . . . . . . . . . . . . . . . . . . . . 4
        *2.*   *Vocational Expert's Testimony* . . . . . . . . . . . . . . . . . . 6
    *C.*   *Hodges' Medical History* . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*IV.*  *CONCLUSIONS OF LAW* . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    *A.*   *ALJ's Disability Determination* . . . . . . . . . . . . . . . . . . . . . . 9
    *B.*   *Objections Raised By Claimant* . . . . . . . . . . . . . . . . . . . . . 12
        *1.*   *Dr. Jaoude's Opinions* . . . . . . . . . . . . . . . . . . . . . . 12
        *2.*   *Kieszkowski's Opinions* . . . . . . . . . . . . . . . . . . . . . 15
        *3.*   *Fully and Fairly Developed Record* . . . . . . . . . . . . . . . . 17
        *4.*   *Credibility Determination* . . . . . . . . . . . . . . . . . . . . 20

*V.*   *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*VI.*  *ORDER* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Catherine G. Hodges on January 9, 2014, requesting judicial review of the Social Security Commissioner's decision to deny her application for Title XVI supplemental security income ("SSI") benefits.[1] Hodges asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her SSI benefits. In the alternative, Hodges requests the Court to remand this matter for further proceedings.

## II. PRINCIPLES OF REVIEW

Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). Substantial evidence is defined as "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'" *Id.* (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*, 674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

---

[1] On March 19, 2014, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams*, 393 F.3d at 801 (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have

decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## III. FACTS

### A. Hodges' Education and Employment Background

Hodges was born in 1970. She completed the eleventh grade. At the administrative hearing, Hodges testified that she did not take any special education courses in high school, and has no difficulties with reading and writing. In the past, she held jobs as a companion, nurse aide, residential aide, and sales clerk.

### B. Administrative Hearing Testimony

#### 1. Hodges' Testimony

At the administrative hearing, Hodges' attorney questioned Hodges about her impairments. At the time of the hearing, Hodges testified that she was 5 feet 3 inches and weighed 327 pounds. She stated that her usual weight was 230 to 240 pounds, but in the last year she had gained almost 90 pounds. She attributed her weight gain to the "fact that I am in so much pain all the time that I cannot move around like I used to. . . . It hurts when I walk. I can only walk about maybe 10 minutes, even when I'm doing grocery shopping, and it gets to the point to where I have to sit down."[2] With regard to household activities, Hodges testified that "I try to cook. I can usually only stand about 10 minutes when I do that. Then I have to sit down just so that I can finish it, because my body is in so much pain."[3] She stated that she has pain in her hips, knees, feet, back, and hands. She uses a cane to help her walk and balance.

---

[2] Administrative Record at 33.

[3] *Id*. at 34.

4

According to Hodges, she also needs help from her husband with most activities of daily living:

> The help that I need is when I take a shower, my husband has to help me get in and out, because I can only go about five, 10 minutes. It hurts to stand when I wash my body. I cannot bend when I do it because I'm in so much pain. I have to sit right down when I am done showering. I need help when I try to do cooking because my body is in so much pain from standing up and doing it. I constantly have to move around on a couch or in a bed when I'm sitting or laying down because I cannot get comfortable. I have to put my legs up so that they don't swell too much. I need help by my husband getting up off the couch, and I usually need help if there's no armrests on a chair or on a couch near me to be able to sit down. When I do shopping, my husband helps me with that. And there's only times that I can only walk about 10 minutes and then I have to sit down on a bench for the rest of the time while my husband finishes.

(Administrative Record at 37-38.) Hodges' attorney also questioned Hodges about her functional abilities:

> Q: Okay. And you've talked a little bit about this, but how long can you stand?
>
> A: 10 minutes.
>
> Q: And what happens after that?
>
> A: After that, my body is in so much pain from standing for 10 minutes that I have to sit down.
>
> Q: And how long do you have to sit?
>
> A: At least 15 to 20 minutes.
>
> Q: And in terms of sitting, how long can you sit at one time before you start to have pain and swelling?
>
> A: Usually about 20 minutes.
>
> Q: And what happens then after 20 minutes?
>
> A: My body is -- my back is constantly hurting. My hip. And I have to generally always move around just to be able to get comfortable so that it stops, or I have to stand for a little bit.
>
> Q: Do you ever have to lie down or --

| | |
|---|---|
| A: | No. |
| Q: | And how far can you walk? |
| A: | I would say probably about 25 to 50 feet before I start to hurt and have to sit down. |
| Q: | And how long do you have to sit after you walk that far? |
| A: | At least a half hour. |
| Q: | You have problems with your balance? |
| A: | Yes, I do. |
| Q: | What problems do you have with that? |
| A: | I get dizzy and lightheaded. And then there are times that I get to the point to where I almost pass out and my husband has to catch me. . . . |
| Q: | Do you have problems with your hands? |
| A: | My joints, they hurt constantly, and they swell. |
| Q: | Okay. Do you have problems with feeling and holding things? |
| A: | Yes. |
| Q: | What about lift[ing]? |
| A: | I can usually lift about maybe five, 10 pounds, and that would be it |

(Administrative Record at 40-43.) Finally, Hodges' attorney inquired whether Hodges believed she was capable of full-time employment. Hodges stated that she was unable to work because "I cannot stand more than 10 minutes. I cannot do the bending that would be required. The sitting, I constantly have to move. I cannot get comfortable. The swelling in my legs, I have to keep them elevated so they don't swell. I just would not be able to work."[4]

### 2.    *Vocational Expert's Testimony*

At the administrative hearing, the ALJ provided vocational expert Elizabeth Mitchell with a hypothetical for an individual with the ability to:

> occasionally lift and carry 10 pounds, and frequently lift and carry less than 10 pounds; she would be able to stand or walk

---

[4] Administrative Record at 49.

for two hours in an eight hour workday, and sit for six hours in an eight hour workday. Her ability to push and pull including the operation of hand and foot controls would be unlimited within those weights. She could occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds; occasionally balance, never stoop, kneel, crouch, or crawl. She would need to avoid concentrated exposure to extreme cold.

(Administrative Record at 53-54.) The vocational expert testified that under such limitations, Hodges could not perform her past relevant work. The vocational expert testified, however, that Hodges could perform the following jobs: (1) order clerk, (2) charge account clerk, and (3) fallout operator. The ALJ asked a second hypothetical which was identical to the first hypothetical, except the individual would also need to "elevate her legs above heart level several times a day in addition to regular breaks[.]"[5] The vocational expert testified that under such limitations, Hodges would be precluded from competitive employment.

## C. Hodges' Medical History

On January 13, 2011, Dr. Tracey Larrison, D.O., reviewed Hodges' medical records and provided Disability Determination Services ("DDS") with a physical residual functional capacity ("RFC") assessment for Hodges. Dr. Larrison determined that Hodges could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for a total of at least two hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Larrison also determined that Hodges could occasionally climb, balance, stoop, kneel, crouch, and crawl. Dr. Larrison further opined that Hodges should avoid even moderate exposure to hazards,

---

[5] Administrative Record at 55.

such as heights and machinery. Dr. Hodges found no manipulative, visual or communicative limitations. Dr. Larrison concluded that:

> In summary, [Hodges'] alleged diagnosis of [rheumatoid arthritis] cannot be confirmed. She does have multiple records with back pain, hip pain, and some various other areas with [a treating source] stating she has myalgias. In addition, [medical evidence of record] indicates antalgic gait along with obesity (BMI 53).
>
> Facts of the file support the conclusion that [Hodges] is maximally capable of activities as outlined in this RFC.

(Administrative Record at 379.)

On January 21, 2011, Dr. Myrna Tashner, Ed.D., reviewed Hodges' medical records and provided DDS with a Psychiatric Review Technique assessment for Hodges. Dr. Tashner diagnosed Hodges with anxiety disorder. Dr. Tashner determined that Hodges had the following limitations: mild restriction of activities of daily living, no difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace. Dr. Tashner concluded that:

> [Hodges'] reported limitations are due to pain, fatigue, and her physical conditino [sic]. [Hodges] does have a [medically determined impairment] of anxiety that is well controlled with medications, therefore is considered nonsevere.

(Administrative Record at 370.)

On July 23, 2012, at the request of Hodges' attorney, Dr. Jean Jaoude, M.D., a treating source, filled out a "Physical Residual Functional Capacity Questionnaire" for Hodges. Dr. Jaoude diagnosed Hodges with back pain, left hip pain, multiple arthralgias, morbid obesity, and anxiety. Dr. Jaoude opined that Hodges' prognosis was "fair." According to Dr. Jaoude, Hodges' experience of pain and other symptoms is severe enough to "frequently" interfere with her attention and concentration. Dr. Jaoude determined that Hodges could: (1) walk one block without rest; (2) continuously sit and

8

stand for 10 minutes; (3) sit and stand/walk less than two hours in an eight-hour workday; (4) never lift in a competitive work situation; (5) use her hands and fingers 50 percent of an eight-hour workday; and (6) rarely (10 percent of an eight-hour workday) use her arms to reach, including no overhead reaching. Dr. Jaoude also determined that Hodges would need a job that allowed her to shift positions at will from sitting, standing, or walking.

On August 7, 2012, Hodges underwent a physical work performance evaluation performed by Steve Kieszkowski, OTR. Hodges was diagnosed with chronic localized bilateral leg swelling, chronic abdominal pain, multiple arthralgias, left hip bursitis, obesity, and rheumatoid arthritis. Upon examination and testing, Kieszkowski concluded that Hodges "cannot perform the full range of Sedentary work as defined by the US Dept. of Labor in the DOT. This is due to limitations while performing the dynamic strength, position tolerance and mobility demands of work. These difficulties are due to pain, gait derangement, elevated fall risk and difficulty sitting without frequent position changes."[6]

## IV. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Hodges is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

---

[6] Administrative Record at 487.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "bears the burden of demonstrating an inability to return to [his] or her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "given [the claimant's] RFC [(residual functional capacity)], age, education, and work experience, there [are] a significant number of other jobs in the national economy that [the claimant] could perform." *Brock*, 674 F.3d at 1064 (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir.

2005)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 416.945. The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Boettcher v. Astrue*, 652 F.3d 860, 867 (8th Cir. 2011) (quoting *Moore*, 572 F.3d at 523); 20 C.F.R. § 416.945.

The ALJ applied the first step of the analysis and determined that Hodges had not engaged in substantial gainful activity since November 30, 2010. At the second step, the ALJ concluded from the medical evidence that Hodges had the following severe impairment: morbid obesity. At the third step, the ALJ found that Hodges did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Hodges' RFC as follows:

> [Hodges] has the residual functional capacity to perform sedentary work . . . in that [she] is capable of carrying/lifting ten pounds occasionally and less than ten pounds frequently, can sit for six hours of an eight hour day, and can stand/walk for two hours of an eight hour day. Her ability to push/pull, including operation of hand/foot controls, would be unlimited within those weights. [Hodges] can occasionally climb ramps/stairs but never climb ladders, ropes, scaffolding. She can occasionally balance, bend, stoop, but never kneel, crouch, or crawl. [She] should avoid concentrated exposure to cold.

(Administrative Record at 15.) Also at the fourth step, the ALJ determined that Hodges could not perform her past relevant work. At the fifth step, the ALJ determined that based on her age, education, previous work experience, and RFC, Hodges could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Hodges was not disabled.

### B. Objections Raised By Claimant

Hodges argues that the ALJ erred in four respects. First, Hodges argues that the ALJ failed to properly evaluate the opinions of Dr. Jaoude. Second, Hodges argues that the ALJ failed to properly evaluate the opinions of Steve Kieszkowski, an examining occupational therapist. Third, Hodges argues that the ALJ failed to fully and fairly develop the record by failing to obtain medical records regarding Hodges' knee surgery, partial hysterectomy, and Dr. Jaoude's treatment. Lastly, Hodges argues that the ALJ failed to properly evaluate her subjective allegations of disability.

### 1. Dr. Jaoude's Opinions

Hodges argues that the ALJ failed to properly evaluate the opinions of her treating physician, Dr. Jaoude. Specifically, Hodges argues that the ALJ's reasons for discounting Dr. Jaoude's opinions are not supported by substantial evidence in the record. Hodges concludes that this matter should be remanded for further consideration of Dr. Jaoude's opinions.

The ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence of the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the

ALJ can accord it less weight. '*Id.*.); *Strongson v. Barnhart,* 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen,* 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ). The ALJ may discount or disregard a treating physician's opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. *Hamilton v. Astrue,* 518 F.3d 607, 609 (8th Cir. 2008).

Also, the regulations require an ALJ to give "good reasons" for assigning weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(d)(2). An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion from a treating source is not given controlling weight, then the ALJ considers the following factors for determining the weight to be given to all medical opinions: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese,* 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(c)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner,* 499 F.3d at 848 (quoting *Pearsall v. Massanari,* 274 F.3d 1211, 1219 (8th Cir. 2001)). The decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. SSR *96-2P,* 1996 WL 374188 (1996).

The ALJ addressed Dr. Jaoude's opinions as follows:

> Given [Hodges'] allegations of totally disabling symptoms, one
> might expect to see some indication in the treatment records of

13

> restrictions placed on [Hodges] by a current treating doctor.
> Yet a review of the record in this case reveals no restrictions
> recommended by the treating doctor. [Hodges'] former
> general practitioner submitted an opinion on functioning, but
> there is no evidence that he has treated her since 2010. For
> these reasons and that his opinion (which basically limits
> [Hodges] to being nearly bedridden and unable to lift any
> amount) is without substantial support from the other evidence
> of record, including his own longitudinal treatment history of
> [Hodges] that was routine and conservative management,
> obviously renders it less persuasive. Little weight is given.

(Administrative Record at 19.)

The Commissioner acknowledges that Hodges correctly pointed out in her brief that Dr. Jaoude saw her in early 2011. However, the Commissioner asserts that Hodges:

> has not established any prejudice from this discrepancy in the
> ALJ's opinion. . . . [Hodges] cites records from other
> physicians that reference Dr. Jaoude, but the last record
> showing that Dr. Jaoude examined [Hodges] was from
> February 2011, more than 1.5 years before she issued her
> opinion. . . . Thus, the ALJ properly discounted Dr. Jaoude's
> opinion, in part, because she rendered it remotely from her last
> examination of [Hodges].

Commissioner's Brief (docket number 12) at 7. The Court agrees with the Commissioner, and finds the ALJ's reasoning sound for discounting Dr. Jaoude's opinions due to the approximately 18 month gap between treating Hodges and rendering an opinion as to her functional capabilities. Furthermore, the Court finds that the ALJ's other reasons for discounting Dr. Jaoude's opinions are supported by substantial evidence in the record.

Therefore, having reviewed the entire record, the Court finds that the ALJ properly considered and weighed the opinion evidence provided by Dr. Jaoude. The Court also finds that the ALJ provided "good reasons" for rejecting Dr. Jaoude's opinions. *See* 20 C.F.R. § 404.1527(d)(2); *Strongson*, 361 F.3d at 1070; *Edwards*, 314 F.3d at 967. Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court

upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

## 2. *Kieszkowski's Opinions*

Steve Kieszkowski, an occupational therapist, is not classified as an "acceptable medical source" under the Social Security Regulations. Even though Kieszkowski is not an "acceptable medical source," the Social Security Administration ("SSA") requires an ALJ to consider such opinions in making a final disability determination. On August 9, 2006, the SSA issued Social Security Ruling 06-03p. The purpose of Ruling 06-03p was to clarify how the SSA considers opinions from sources not classified as "acceptable medical sources." *See Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007) (discussing SSR 06-03p). Ruling 06-03p provides that when considering the opinion of a source that is classified as a "not acceptable medical source," such as a physician's assistant, "it would be appropriate to consider such factors as the nature and extent of the relationship between the source and the individual, the source's qualifications, the source's area of specialty or expertise, the degree to which the source presents relevant evidence to support his or her opinion, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion." SSR 06-03p. Furthermore, in discussing SSR 06-03p, the Eighth Circuit Court of Appeals, in *Sloan*, pointed out:

> Information from these 'other sources' cannot establish the existence of a medically determinable impairment, according to SSR 06-3p. Instead, there must be evidence from an 'acceptable medical source' for this purpose. However, information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.

*Sloan*, 499 F.3d at 888 (quoting SSR 06-03p). In determining the weight afforded to "other medical evidence," an "ALJ has more discretion and is permitted to consider any

inconsistencies found within the record." *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (citation omitted).

In her decision, the ALJ addressed Kieszkowski's opinions as follows:

> A functional capacity evaluation completed on the eve of her disability hearing by her occupational therapist indicated [Hodges] was unable to perform at a sedentary level of work. As pointed out in 20 CFR 404.1513 and 416.913, the establishment of an impairment must come from acceptable medical sources. Acceptable medical sources are identified as licensed physicians, licensed osteopaths, licensed or certified psychologists, licensed optometrists, and persons authorized to send summaries of medical records of a hospital, clinic, sanitarium, medical institution or health care facility. Subsection (e) indicates that information from other sources might help in understanding how an impairment affects an individual's ability to work. "Other sources" include, inter alia, practitioners such as naturopaths, chiropractors, and the like. Occupational therapists are not identified as acceptable medical sources, but "other" sources, and the undersigned must rely on the opinions of treating and consulting medical specialists who examined [Hodges]. Nevertheless, the opinions have been evaluated under 20 CFR 404.1527(d); 20 CFR 416.927(d), and SSR-06-03p. The therapist apparently relied quite heavily on the subjective report of symptoms and limitations provided by [Hodges], and seemed to uncritically accept as true most, if not all, of what [Hodges] reported. Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of [Hodges'] subjective complaints. Again, minimal weight has been given to the extremity of limitations arrived at by this evaluation, although [Hodges] has been assessed as capable of a range of sedentary work as supported by the other objective evidence of record.
>
> The opinions of the State Agency medical advisors, assessing [Hodges] as capable of a range of sedentary-duty work with nonsevere mental impairments, are given greater weight. The limitations noted by the examiners are well supported with

specific references to medical evidence. The opinions are internally consistent as well as consistent with the evidence as a whole. As there is no objective evidence contradicting the findings, the opinions are entitled to substantial weight. The undersigned adopts the restrictions found in the opinions and has incorporated them into the residual functional capacity noted above.

(Administrative Record at 19-20.)

Having reviewed the entire record, the Court finds that the ALJ properly considered Kieszkowski's opinions in accordance with SSR 06-03p. Furthermore, the ALJ properly articulated her reasons for attributing little weight to Kieszkowski's opinions, and for finding his opinions to be inconsistent with the record as a whole. *See Raney*, 396 F.3d at 1010 (Providing that in considering the opinions of a medical source that is not an "acceptable medical source," an "ALJ has more discretion and is permitted to consider any inconsistencies found within the record."); *see also Kirby*, 500 F.3d at 709 (providing that an ALJ is entitled to give less weight to a medical source opinion where the opinion is based on a claimant's subjective complaints rather than on objective medical evidence); *Sloan*, 499 F.3d at 889 (providing that a factor to consider in weighing evidence from a medical source that is not an "acceptable medical source" is the consistency of such as source's opinions with the record as a whole). Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 3. *Fully and Fairly Developed Record*

In her brief, Hodges argues that:

The record in this case is incomplete. At the hearing, [she] testified to recent knee surgery. She also had a partial hysterectomy. Hodges apparently saw Dr. Jean Jaoude sometime between June 2011 and July 6, 2012. Finally, the record does not include treatment records from Dr. Jaoude for

> that time period. Such additional records may affect
> Dr. Jaoude's status as a treating physician.

Hodges' Brief (docket number 10) at 16. In response, the Commissioner asserts that the

ALJ fulfilled her duty to fully and fairly develop the record. The Commissioner points out

that:

> [T]he records that [Hodges] identifies are hypothetical and/or
> of dubious relevance to the disability determination. For
> example, [Hodges] argues that the ALJ should have obtained
> evidence related to her recent hysterectomy. However, at the
> administrative hearing, the ALJ questioned [Hodges] about the
> hysterectomy, and [she] said it was not related to her
> musculoskeletal problems.[7] Moreover, as both the ALJ and
> [Hodges'] attorney mentioned at the administrative hearing,
> the record contains a full record of [Hodges'] treatment for her
> hysterectomy.[8]

Commissioner's Brief (docket number 12) at 14. As for her knee surgery, the

Commissioner notes that there is no evidence in the record that any medical sources found

the surgery to cause Hodges any work-related limitations. The Commissioner also points

out that in her decision, the ALJ explicitly found Dr. Jaoude to be a treating source, and

evaluated her opinion under the treating source standard.[9] Furthermore, the

Commissioner asserts that:

> [Hodges] also argues that the record shows that Dr. Jaoude
> saw [her] sometime between June 14, 2011 and July 6, 2012,
> and that the ALJ should have obtained records from
> Dr. Jaoude from this period. The only evidence that [Hodges]
> provides is her own written report that she saw Dr. Jaoude
> during this period. Moreover, the record shows that on July
> 9, 2012, [Hodges'] attorney sent Dr. Jaoude a request for

---

[7] *See* Administrative Record at 40.

[8] *Id.* at 409-420.

[9] *Id.* at 19.

> [Hodges'] medical records from February 22, 2011, through
> July 6, 2012. Dr. Jaoude responded with a partially completed
> RFC assessment form, and [Hodges] provides no evidence that
> Dr. Jaoude had relevant records she failed to submit.

Commissioner's Brief (docket number 12) at 14-15. The Commissioner concludes that

Hodges "has not established that any additional records existed, never alleged difficulty

obtaining records, never requested assistance in obtaining records, and cannot now fault

the ALJ for not obtaining records that may not even exist."[10]

An ALJ has a duty to develop the record fully and fairly. *Cox*, 495 F.3d at 618;

*Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134,

1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding,

the ALJ must develop the record fully and fairly in order that "'deserving claimants who

apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v.

Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930

(8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ

has a duty to fully develop the record."). "There is no bright line rule indicating when the

Commissioner has or has not adequately developed the record; rather, such an assessment

is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008)

(citation omitted). Having reviewed the entire record, the Court concludes that the ALJ

fulfilled her duty to fully and fairly develop the record in this case.

The Court agrees with the arguments of the Commissioner on this issue. As the

Commissioner correctly pointed out, Hodges failed to demonstrate the existence of any

additional records, did not allege any difficulty in obtaining any records, and did not ask

for assistance in obtaining any records. Moreover, there is no evidence that any of the

alleged missing records would be relevant to the instant issue of whether Hodges is

disabled. Specifically, the record contains medical evidence of Hodges' partial

---

[10] Commissioner's Brief (docket number 12) at 15-16.

hysterectomy. Furthermore, opinions provided by treating and examining sources after Hodges' knee surgery offered no suggestion that her surgery resulted in any form of limitation. Finally, contrary to Hodges' assertion, the ALJ did, in fact, evaluate Dr. Jaoude's opinions as the opinions of a treating source and not as a non-treating medical source. Therefore, having reviewed the entire record, the Court finds that the ALJ fulfilled her duty to fully and fairly develop the record in this case. *See Cox*, 495 F.3d at 618. Accordingly, the Court concludes that Hodges' arguments on this issue are without merit.

### 4. *Credibility Determination*

Hodges argues that the ALJ failed to properly evaluate her subjective allegations of disability. Hodges maintains that the ALJ's credibility determination is not supported by substantial evidence. Additionally, while it is not entirely clear to the Court how the ALJ's evaluation of Hodges' obesity is related to the ALJ's credibility determination, Hodges, nevertheless, also argues that the ALJ failed to properly evaluate her obesity.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the objective medical

evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman*, 596 F.3d at 968; *see also Finch*, 547 F.3d at 935 (same); *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski factors.'" *Renstrom*, 680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010)); *see also Ford*, 518 F.3d at 982 (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

The Court will first address Hodges' argument with regard to the ALJ's alleged failure to properly evaluate her obesity. Social Security Ruling ("SSR") 02-1p provides that the Social Security Administration considers "obesity to be a medically determinable impairment and reminds adjudicators to consider the effects when evaluating disability. The provisions also remind adjudicators that the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." SSR 02-1p. The ruling also instructs "adjudicators to consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity." *Id.*

In addressing Hodges' obesity, the ALJ stated:

> The undersigned has given consideration to the limitations imposed by [Hodges'] obesity, as require[d] by Social Security Ruling 02-1p which instructs adjudicators to consider the effects of obesity not only under the listings, but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity. When obesity is identified as a medically determinable impairment, consideration will be given to any functional limitations resulting from the obesity in the residual functional capacity assessment in addition to any limitations resulting from any other physical or mental impairments identified.

(Administrative Record at 17.) Furthermore, in her discussion of Hodges' medical history, the ALJ specifically addressed Hodges' obesity at several points, including noting that she needed to lose weight.[11]

Here, the ALJ found that Hodges' morbid obesity was a severe impairment, and explicitly stated that she considered Hodges' obesity in making her disability

---

[11] *See* Administrative Record at 17-18.

determination. While it is arguable that the ALJ could have better articulated her consideration of the effect of Hodges' obesity on her functional limitations, the Court believes that the ALJ fully considered Hodges' obesity in making her RFC and disability determinations in accordance with SSR 02-1p. In drawing this conclusion, the Court bears in mind that while an ALJ is required to fully and fairly develop the record, he or she "'is not required to discuss every piece of evidence submitted.'" *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)). Furthermore, failure of an ALJ to cite specific evidence is not an indication that he or she failed to consider such evidence. *Id.* Therefore, having reviewed the entire record, the Court finds that the ALJ fully and fairly developed the record with regard to the issue of Hodges' obesity. Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

Turning to her credibility determination, the ALJ addressed Hodges' credibility as follows:

> After careful consideration of the evidence, the undersigned finds that [Hodges'] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. . . .
>
> [Hodges] has not generally received the amount and type of medical treatment one would expect for a totally disabled individual, considering the relatively infrequent trips to the doctor for the allegedly disabling symptoms and significant gaps in [Hodges'] history of treatment.
>
> As noted above, there have been some discrepancies in information reported by [Hodges] to Agency personnel versus various treating sources when addressing symptom levels,

> effectiveness of treatment, and capabilities of functioning.
> While the inconsistent information provided by [Hodges] may
> not be the result of a conscious intention to mislead,
> nevertheless the inconsistencies suggest that the information
> provided by [Hodges] generally may not be entirely reliable.
> Therefore, [Hodges'] credibility is eroded. . . .
>
> [Hodges] has never worked long enough to earn substantial
> gainful activity level earnings over a calendar year. Her
> sporadic work history raises some questions as to whether the
> current unemployment is truly the result of medical problems.

(Administrative Record at 17-19.) The ALJ also points out that in general, Hodges' activities of daily living are inconsistent with her allegations of total disability.[12]

It is clear from the ALJ's decision that she thoroughly considered and discussed Hodges' treatment history, medical history, functional restrictions, effectiveness of medications, activities of daily living, and work history in making her credibility determination. Thus, having reviewed the entire record, the Court finds that the ALJ adequately considered and addressed the *Polaski* factors in determining that Hodges' subjective allegations of disability were not credible. *See Johnson*, 240 F.3d at 1148; *see also Goff*, 421 F.3d at 791 (an ALJ is not required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)."). Accordingly, because the ALJ seriously considered, but for good reasons explicitly discredited Hodges' subjective complaints, the Court will not disturb the ALJ's credibility determination. *See Johnson*, 240 F.3d at 1148. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ

---

[12] *See* Administrative Record at 18.

because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### V. CONCLUSION

The Court finds that the ALJ properly considered and addressed the medical evidence and opinions in the record, including the opinions of Dr. Jaoude and Kieszkowski. The Court further finds that the ALJ properly fulfilled her duty to fully and fairly develop the record in this case. Additionally, the Court finds that the ALJ properly considered Hodges' obesity in making her RFC assessment for Hodges, and fully and fairly developed the record on the issue of Hodges' obesity. Finally, the Court finds that the ALJ properly determined Hodges' credibility with regard to her subjective complaints of disability. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

### VI. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

1. The final decision of the Commissioner of Social Security is **AFFIRMED**;
2. Plaintiff's Complaint (docket number 3) is **DISMISSED** with prejudice; and
3. The Clerk of Court is directed to enter judgment accordingly.

DATED this ___5th___ day of November, 2014.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA